# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| PURSUING AMERICA'S GREATNESS ) | |
| 11300 Cantrell Road, Suite 301 ) | |
| Little Rock, AR 72212, ) | Civil Case No. |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S VERIFIED** |
| ) | **COMPLAINT FOR** |
| v. ) | **DECLATORY AND** |
| ) | **INJUNCTIVE RELIEF** |
| FEDERAL ELECTION COMMISSION ) | |
| 999 E Street, NW ) | |
| Washington, DC 20463, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Pursuing America's Greatness ("PAG") brings this action for declaratory and injunctive relief, and complains as follows:

## INTRODUCTION

This is a pre-enforcement, as-applied challenge to the Federal Election Commission's (the "FEC") interpretation in Advisory Opinion 2015-04 (Collective Action PAC) of the regulations at 11 C.F.R. §§ 102.14(a) and (b), which implement a provision of the Federal Election Campaign Act of 1971, as amended ("FECA"), now codified 52 U.S.C. § 30102(e).

1.      The FEC's recent application of its regulations at 11 C.F.R. §§ 102.14(a) and (b), as reflected in Advisory Opinion 2015-04 (Collective Actions PAC), interprets and implements a provision of FECA in a manner that is inconsistent with the terms of FECA and impermissibly infringes on PAG's ability to engage in political activities that are constitutionally protected as set forth in *Citizens United v. FEC*, 558 U.S. 310 (2010), *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015), and *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010).

2.      This case challenges the FEC's interpretation and application of a law that abridges the freedom of speech and association guaranteed under the First Amendment of the U.S. Constitution.  These challenges are brought as applied against 52 U.S.C. § 30102(e)(4) and its implementing regulations at 11 C.F.R. §§ 102.14(a) – (b), as interpreted and applied in Advisory Opinion 2015-04 (Collective Actions PAC) (collectively the "PAC Naming Prohibition").

3.      The First Amendment protects PAG's right to make independent expenditures, engage in independent political activities, and otherwise exercise its First Amendment rights to free speech and association.  Wishing to continue to exercise those rights, PAG would like to engage in certain speech with the advance knowledge that its activities comply with the requirements of FECA.

4.      An independent political committee's independent expenditures are constitutionally protected under *Buckley v. Valeo*, 424 U.S. 1 (1976), *Citizens United v. FEC*, 558 U.S. 310 (2010), and *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010).

5.      PAG filed Articles of Incorporation as a non-profit corporation in the State of Arkansas on March 5, 2015.

6.      PAG registered with the FEC as an unauthorized, independent expenditure-only political committee on March 11, 2015 by filing FEC Form 1 (Statement of Organization).  PAG operates pursuant to Internal Revenue Code Section 527 as a "political organization" for federal tax purposes.

7.      PAG maintains a website at www.pagpac.com.

8.      Strategic Media 21, located in San Jose, California, is the owner of the website located at www.ilikemikehuckabee.com, and a Facebook page titled "I Like Mike Huckabee" which is located at www.facebook.com/ilikemikehuckabee.

9.      As of July 24, 2015, 181,679 persons had interacted with the "I Like Mike Huckabee" Facebook page and indicated that they "like" that page.

10.     On or about July 9, 2015, PAG entered into a contract with Strategic Media 21 under which PAG controls the operation and maintenance, including the content, of the website www.ilikemikehuckabee.com and Facebook page "I Like Mike Huckabee," as part of PAG's independent efforts in support of Governor Mike Huckabee, who is a candidate for President of the United States.  By operating and maintaining this website and Facebook page, PAG is able to communicate with large numbers of individual, grassroots supporters of Governor Mike Huckabee.

11.     PAG began operating and maintaining the website and social media account on or about July 9, 2015.

12.     PAG has not, and does not intend to, use the website www.ilikemikehuckabee.com or the Facebook page "I Like Mike Huckabee" to solicit contributions to PAG or otherwise engage in fundraising activities.

13.     PAG intends to establish and operate a Twitter account utilizing a Twitter "handle" that includes the name "Mike Huckabee" or "Huckabee" and that will be used to distribute content that is supportive of Governor Mike Huckabee's candidacy for President.  A Twitter "handle" is the identifying name by which a Twitter account is known to the public.  For example, the New York Times' Twitter handle is "@nytimes" while President Obama uses "@POTUS" to distribute communications.

14.     Collective Actions PAC is an unauthorized, independent expenditure-only political committee whose goal is "to help Sen. Bernie Sanders in his bid to win the Democratic

nomination for President."  Advisory Opinion Request of Collective Actions PAC (June 3, 2015) at 1 (attached as Exhibit 1).

15.     On or about June 3, 2015, Collective Actions PAC filed a written advisory opinion request with the FEC asking if the PAC's inclusion of the word "Bernie" in the names and titles of certain websites and social media accounts it operates is permissible under the FECA and FEC regulations.  *See* Advisory Opinion Request of Collective Actions PAC.  Specifically, Collective Actions PAC's advisory opinion request inquired about its operation of the websites RunBernieRun.com, ProBernie.com, BelieveInBernie.com, the Facebook page "Run Bernie Run," and the Twitter accounts "@Bernie_Run" and "@ProBernie."  Advisory Opinion Request of Collective Actions PAC at 1.  Collective Actions PAC specified in its advisory opinion request that it did not wish to use these platforms to raise money or solicit contributions.  Rather, the PAC "hope[d] to reach millions of voters and believe[d] being active online is the way to achieve our goal."  Advisory Opinion Request of Collective Actions PAC at 1.

16.     On July 16, 2015, the FEC issued Advisory Opinion 2015-04, which concludes that "[b]ecause the names of the Committee's [Collective Actions PAC's] websites and social media accounts that include Senator Sanders's name do not clearly express opposition to him, those sites and accounts are impermissible under 11 C.F.R. § 102.14."  FEC Advisory Opinion 2015-04 (Collective Actions PAC) at 4 (attached as Exhibit 2).  As a result, the FEC has formally opined that its regulations do not permit Collective Actions PAC to operate websites with Universal Resource Locators (URLs) of www.RunBernieRun.com, www.ProBernie.com, www.BelieveInBernie.com, or a Facebook page titled "Run Bernie Run," or Twitter accounts with the handles of "@Bernie_Run" and "@ProBernie" in any way that does not clearly express opposition to Senator Bernie Sanders.  The PAC Naming Prohibition does not permit Collective

Actions PAC to operate the aforementioned website URLs and social media accounts, regardless of whether they are used for fundraising, advocacy or any other purpose.  Under Advisory Opinion 2015-04, it makes no difference how Collective Actions PAC utilizes these online assets; rather, because the PAC does not clearly express opposition to Senator Sanders, the titles/names of these webpages and social media accounts are deemed offensive by the government and are not permitted under FEC regulations.

17.     All organizations similarly situated to Collective Actions PAC, including PAG, now face the prospect of potential civil and criminal penalties if they speak through websites, Facebook pages, or other social media platforms that are materially indistinguishable from Collective Actions PAC's without first seeking a pre-enforcement preliminary injunction.

18.     On July 17, 2015, in order to comply with Advisory Opinion 2015-04, and while pursuing this litigation, PAG ceased any further work on updating, maintaining, promoting or changing these pages.  However, these pages exist in the same form as they were left on July 17, 2015, although PAG's communications to supporters are no longer current.

19.     Because of the FEC's failure to faithfully apply the First Amendment, FECA, FEC regulations, and controlling judicial precedent, PAG intends to refrain from engaging in certain political speech and is halting further communications through www.ilikemikehuckabee.com and the Facebook page "I Like Mike Huckabee" due to fear of civil and criminal penalties which potentially and realistically may be levied against PAG for failure to comply with the FEC's regulations, as reflected in Advisory Opinion 2015-04.  PAG will further refrain from establishing or operating a Twitter account that utilizes a Twitter handle including the name "Mike Huckabee" or "Huckabee" for the purpose of distributing content that is supportive of Governor Mike Huckabee's candidacy for President.

20.    PAG is presently stymied in its ability to speak with respect to significant, important national political policy issues of the day, including the upcoming Presidential election, while this matter remains unresolved.

21.    The FEC's action infringes on the constitutionally protected rights of PAG, an unauthorized, independent expenditure-only political committee similarly situated to Collective Actions PAC, causing injuries by forcing it to seek judicial relief before engaging in political speech which plaintiff reasonably believes is protected by the First Amendment.

22.    PAG seeks a declaratory judgment from this court: (a) finding the FEC's recent interpretation of 52 U.S.C. § 30102(e)(4) (naming of a political committee) and 11 C.F.R. §§ 102.14(a) and (b), as expressed in Advisory Opinion 2015-04 (the PAC Naming Prohibition), as applied to PAG's current speech and proposed communications, is impermissible under the First Amendment; and (b) finding the FEC's recent interpretation of 11 C.F.R. §§ 102.14(a) and (b) inapplicable to PAG's current speech and proposed communications  under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, because such application would be arbitrary, capricious, an abuse of discretion, and contrary to law; and (c) preliminarily and permanently enjoining the FEC from enforcing the FECA against PAG for its use of website URLs, Twitter handles, or other social media accounts that include the name "Mike Huckabee" or other references to Governor Huckabee for purposes other than soliciting funds.

### JURISDICTION AND VENUE

23.    This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 2201 as a challenge arising under the First Amendment to the Constitution of the United States, the judicial review provisions of the APA, 5 U.S.C. §§ 702-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

24.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(c) because Defendant is an entity of the United States Government, Plaintiff is organized and resides in Arkansas, and no real property is at issue.

## PARTIES

25.    PAG is a non-profit corporation organized in the State of Arkansas.  PAG operates pursuant to Internal Revenue Code Section 527 as a "political organization."  PAG is registered with the FEC as an unauthorized, independent expenditure-only political committee pursuant to *SpeechNow.org v. FEC.*

26.    The FEC is the federal agency charged with civil enforcement of FECA and is located in Washington, D.C.

## STATEMENT OF FACTS

27.    PAG was founded in 2015 to independently advocate for the election of Mike Huckabee as President of the United States.

28.    On or about June 3, 2015, Collective Actions PAC submitted an advisory opinion request, attached as Exhibit 2, to the FEC pursuant to 52 U.S.C. § 30108.  This request asked if the PAC's inclusion of the word "Bernie" in the names and titles of certain websites and social media accounts it operates (the websites www.RunBernieRun.com, www.ProBernie.com, www.BelieveInBernie.com, the Facebook page "Run Bernie Run," and the Twitter accounts "@Bernie_Run" and "@ProBernie") is permissible under the FECA and FEC regulations.

29.    Pursuant to 11 C.F.R. § 112.1, the FEC accepted the Advisory Opinion Request for review, designated the matter Advisory Opinion Request 2015-04, and posted it to the FEC's website for public comment.

30.     On July 13, 2015, the FEC's Office of General Counsel issued a draft Advisory Opinion in response to Collective Actions PAC's Advisory Opinion Request. The draft Advisory Opinion, labeled Draft A, concluded that Collective Actions PAC's use of website URLs, a Facebook page, and Twitter handles that included the word "Bernie" violated Commission regulations.  *See* Advisory Opinion 2015-04, Draft A, Agenda Document No. 15-39-A (attached as Exhibit 3).

31.     On July 16, 2015, at an open meeting of the FEC, the Commission by a vote of 6 to 0 approved Advisory Opinion 2015-04, Draft A.  (Audio of the FEC's consideration of Advisory Opinion 2015-04, Draft A, is available at http://www.fec.gov/audio/2015/2015071604.mp3.)

32.     The effect of Advisory Opinion 2015-04 is to deprive PAG of the ability to rely on a legal defense available pursuant to 52 U.S.C. § 30108(c)(1)(B).  Under that provision, if the FEC had concluded that Collective Actions PAC request was permissible, PAG could then have relied upon Collective Actions PAC's Advisory Opinion as a "person involved in any specific transaction or activity which is indistinguishable in all its material aspects from the transaction or activity with respect to which such advisory opinion is rendered."  52 U.S.C. § 30108(c)(1)(B).

33.     The Advisory Opinion in this matter is complete and deprives Plaintiff of a legal right – the ability to engage freely in constitutionally protected speech and association.  *See Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010) ("parties are commonly not required to violate an agency's legal position and risk an enforcement proceeding before they may seek judicial review").

34.     PAG operates and maintains a webpage (www.ilikemikehuckabee.com) and Facebook page ("I Like Mike Huckabee") that are materially indistinguishable as a legal matter from those that Collective Actions PAC sought permission to use, albeit in support of a different candidate.

35.     As soon as possible, PAG wishes to obtain a determination of its legal obligations

with respect to the use of this website and Facebook page so that it is able to plan and implement

its constitutionally-protected political speech efforts over the coming months.

36.     If PAG chooses to engage in speech that is materially indistinguishable from the

speech at issue in the Advisory Opinion 2015-04, PAG is potentially subject to civil and criminal

penalties, as well as the costs of enduring a government investigation, as a consequence of

engaging in activities it believes are wholly permissible and protected.

37.     Specific examples of PAG's intended communications are attached as Exhibit 4.

38.     The website www.ilikemikehuckabee.com and Facebook page "I Like Mike

Huckabee" exist presently and are accessible in the same condition as they were on July 17,

2015, when PAG ceased updating those pages.

39.     In the absence of a declaratory judgment, PAG would be forced to curtail its political

speech.

40.     Without an immediate ruling from this court, PAG will not have the necessary time to

plan and carry out its activities, given that the Presidential primary season is well underway, and

the first votes will be cast in less than six months.

41.     PAG faces a credible threat of prosecution if it engages in speech that the FEC has

concluded, in a materially indistinguishable context, is impermissible, even though PAG believes

the FEC's speech restrictions violate the First Amendment and FECA.

42.     PAG is chilled from proceeding with its planned activities because it reasonably

believes that it will be subject to a FEC investigation (and potentially a U.S. Department of

Justice investigation) and possible enforcement action that could result in civil and criminal

penalties based on the FEC's Advisory Opinion concluding that certain types of political

committees are prohibited from utilizing website URLs, Facebook pages, and Twitter accounts that include the name of a federal candidate that do not include fundraising appeals unless the website, Facebook page, or Twitter account content clearly opposes the candidate.

43.     The chilled speech of PAG constitutes irreparable harm because it is the loss of First Amendment rights.  There is no adequate remedy at law.

## COUNT 1
**As applied to an independent expenditure-only committee that is not engaged in fundraising activities, the PAC Naming Prohibition is an unreasonable interpretation of FECA and implementing regulations insofar as it prohibits the use of certain words in website URLs and social media accounts**

44.     There is no dispute that PAG may engage in unlimited independent expenditures in support of Mike Huckabee's candidacy for President of the United States.  See *Buckley v. Valeo*, 424 U.S. 1 (1976), *Citizens United v. FEC*, 558 U.S. 310 (2010), and *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010).

45.     FECA provides that "[i]n the case of any political committee which is not an authorized committee, such political committee shall not include the name of any candidate in its name." 52 U.S.C. § 30102(e)(4).  By regulation, the FEC extended this prohibition from the actual name of the political committee to also include "any name under which a committee conducts activities, such as solicitations or other communications, including a special project name or other designation." 11 C.F.R. § 102.14(a).  The FEC also adopted limited exceptions to this rule, including that "[a]n unauthorized political committee may include the name of a candidate in the title of a special project name or other communication if the title clearly and unambiguously shows opposition to the named candidate." 11 C.F.R. § 102.14(b)(3).  Through advisory opinions, the FEC determined that "a special project name or other designation" includes website URLs, the titles of Facebook pages, and Twitter account handles.  *See* Federal

Election Commission Advisory Opinions 1995-09 (NewtWatch PAC) and 2015-04 (Collective Actions PAC).

46.     PAG may, among other activities, produce and distribute television advertisements that include the words "I Like Mike Huckabee" in text across the top of the screen for the duration of the advertisement, produce and distribute radio advertisements that include the message "I Like Mike Huckabee", and send mailers that say "I Like Mike Huckabee" across the front – subject to the FEC's reporting and disclaimer requirements.

47.     However, the FEC determined in Advisory Opinion 2015-04 that Collective Actions PAC may not operate websites with URLs of www.RunBernieRun.com, www.ProBernie.com, www.BelieveInBernie.com, or a Facebook page titled "Run Bernie Run," or Twitter accounts with the handles of "@Bernie_Run" and "@ProBernie."  Because PAG's pro-Huckabee website and Facebook page are materially indistinguishable from those that were the subject of Advisory Opinion 2015-04, the FEC would conclude that PAG may not maintain a website at the URL www.ilikemikehuckabee.com or a Facebook page titled "I Like Mike Huckabee."

48.     Until 1992, the FEC took the position that the PAC naming restriction at 2 U.S.C. § 30102(e)(4) meant what it said: "In the case of any political committee which is not an authorized committee, such political committee shall not include the name of any candidate in its name."  That is, the provision prohibited an unauthorized political committee from including a federal candidate's name in the unauthorized political committee's name.  (In 2012, for example, an unauthorized political committee could not register itself with the FEC as "Americans for Obama PAC" or "United for Romney PAC.")  *See* FEC Final Rule on Special Fundraising Projects and Other Use of Candidate Names by Unauthorized Committees, 59 Fed. Reg. 17,267

(April 12, 1994) ("Prior to the 1992 revision, the Commission had construed this prohibition as applying only to the name under which a committee registers with the Commission.").

49.     In 1988, the U.S. Court of Appeals for the District of Columbia Circuit upheld the FEC's original, pre-1992 view against a challenge brought by Common Cause, which argued that the provision must be read to extend beyond the PAC's formal name and also include "any title under which such a committee holds itself out to the public for solicitation or propagandizing purposes." *Common Cause v. FEC*, 842 F.2d 436, 441 (D.C. Cir. 1988).  The D.C. Circuit determined that Common Cause's preferred construction was "not a totally implausible interpretation of the statute's language," but after extensively reviewing the legislative history of the relevant statutory provision, ultimately concluded that "[i]t seems downright unlikely that Congress would have enacted so broad a reform affecting the projects of unauthorized committees without a single word of explanation or debate," and the FEC's interpretation "is the better interpretation." *Id*. at 444, 448.

50.     In 1992, the FEC conducted a rulemaking and adopted the position it litigated against in *Common Cause v. FEC*, despite having been told by the D.C. Circuit  in 1988 that the agency's longstanding interpretation of the PAC naming provision was "the better interpretation," and that Common Cause's preferred interpretation was merely "not a totally implausible interpretation." *See* FEC Final Rule on Special Fundraising Projects and Other Use of Candidate Names by Unauthorized Committees, 57 Fed. Reg. 31,424 (July 15, 1992).  The FEC's 1992 rule added new language to 11 C.F.R. § 102.14, indicating that "'name' for the purpose of the 2 U.S.C. 432(e)(4) [now 52 U.S.C. § 30102(e)(4)] prohibition [] include[s] any name under which a committee conducts activities, such as solicitations or other communications, including a special project name or other designation." *Id*. at 31,425.  The

Commission asserted that its new rule was "narrowly designed to further the legitimate governmental interest in minimizing the possibility of fraud and abuse in this situation." *Id*. While the Commission's rule extended beyond fundraising appeals, virtually every rationale presented in the Final Rule involved potential fundraising fraud and confusion.

51.     In 1994, the FEC reconsidered its regulation and adopted the exemption now found at 11 C.F.R. § 102.14(b)(3), which allows an unauthorized committee to "include the name of a candidate in the title of a special project name or other communication if the title clearly and unambiguously shows opposition to the named candidate." *See* FEC Final Rule on Special Fundraising Projects and Other Use of Candidate Names by Unauthorized Committees, 59 Fed. Reg. 17,267 (April 12, 1994).  The "opposition" exemption was adopted after the FEC received a Petition for Rulemaking from "Citizens Against David Duke," a proposed project of the American Ideas Foundation.  *Id*. at 17,267.  The FEC was responsive to this request and "acceded to the petitioner's main concern, amending the rules to permit the American Ideas Foundation to use the names of federal candidates in titles that clearly indicate opposition to such candidates." *Id*. at 17,269.  The FEC "recognize[d] that the potential for fraud and abuse is significantly reduced in the case of such titles." *Id*.

52.     In the span of a few years, the FEC's rule on the use of candidate names by unauthorized political committees morphed from (1) a rule that barred the use of a candidate's name in the PAC's registered name, to (2) a rule that also barred the use of a candidate's name in a "special project name or other designation," to (3) a rule that also barred the use of a candidate's name in a "special project name or other designation," except when the political committee expressed opposition to that candidate.  Subsequently, the FEC determined that a "special project name or other designation" includes a website URL and social media account

titles.  *See* FEC Advisory Opinions 1995-09 (NewtWatch PAC) and Advisory Opinion 2015-04

(Collective Actions PAC).  In other words, in 1991, an unauthorized political committee simply

had to choose a PAC name that didn't include a federal candidate's name, while today, an

organization such as PAG may not communicate with supporters through a Facebook page with

the heading "I Like Mike Huckabee," although "I *Don't* Like Mike Huckabee" would be

perfectly acceptable.

53.     The FEC claimed in 1994 that this regulatory scheme was "narrowly designed to

further the legitimate governmental interest in minimizing the possibility of fraud and abuse."

FEC Final Rule on Special Fundraising Projects and Other Use of Candidate Names by

Unauthorized Committees, 59 Fed. Reg. at 17,268.

54.     The PAC Naming Prohibition is inconsistent with 52 U.S.C. § 30102(e)(4), as applied

to website URLs and social media accounts that do not include fundraising solicitations.  It is

arbitrary, capricious, an abuse of discretion, and contrary to law under the Administrative

Procedure Act (5 U.S.C. §§ 551-706).

### COUNT 2
**Application of the PAC Naming Prohibition to Website URLs and Social Media Accounts
Operated by Unauthorized Political Committees Constitutes a Prior Restraint and is
Prohibited by the First Amendment**

55.     All of the allegations contained in Paragraphs 1 through 54 above are re-alleged and

incorporated herein by reference.

56.     A FEC regulation that prohibits independent speakers from using certain words – the

names of candidates for public office unless in opposition – in their website URLs and in titles of

social media webpages and accounts is a prior restraint on speech that violates the First

Amendment.

57.     Advisory Opinion 2015-04 prohibits PAG from speaking through a website located at www.ilikemikehuckabee.com and a Facebook page titled "I Like Mike Huckabee," regardless of whether PAG intends to solicit any contributions on these platforms, and regardless of whether there is any risk or evidence of "fraud or abuse."

58.     As the Supreme Court explained, "[t]he term 'prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.' M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984) (emphasis added). Temporary restraining orders and permanent injunctions - *i.e.*, court orders that actually forbid speech activities -- are classic examples of prior restraints. See *id.*, § 4.03, at 4-16." *Alexander v. United States*, 509 U.S. 544, 550 (1993). "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

59.     In *Citizens United*, the Supreme Court discussed prior restraints in the context of campaign finance regulation.  The Court wrote, "These onerous restrictions thus function as the equivalent of prior restraint by giving the FEC power analogous to licensing laws implemented in 16th- and 17th-century England, laws and governmental practices of the sort that the First Amendment was drawn to prohibit. . . . When the FEC issues advisory opinions that prohibit speech, '[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech--harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas.'" *Citizens United v. FEC*, 558 U.S. 310, 335 (2010) (internal citations omitted).

60.     PAG is entitled to a declaratory judgment that its use of website URLs, Facebook

page titles, and Twitter accounts that include the name of a candidate, but which do not express

opposition to that candidate, and are not used to engage in solicitations or fundraising, do not

violate FECA and are protected by the First Amendment.

61.     If the PAC Naming Prohibition is applied in a manner that prohibits the use of certain

words (*i.e.*, candidate names) in website URLs, Facebook page titles, and Twitter accounts in

communications that do not include a solicitation of funds, the application of that interpretation

violates the First Amendment and must be enjoined.

## COUNT 3
### The PAC Naming Prohibition, as Applied to the Use of Website URLs, Facebook Page Titles, and Twitter Accounts by Unauthorized Political Committees, Constitutes an Impermissible Content-Based Regulation of Speech in Violation of the First Amendment's Protections

62.     All of the allegations contained in Paragraphs 1 through 61 above are re-alleged and

incorporated herein by reference.

63.     FECA provides that "[i]n the case of any political committee which is not an

authorized committee, such political committee shall not include the name of any candidate in its

name."  52 U.S.C. § 30102(e)(4).  By regulation, the FEC extended this prohibition from the

actual name of the political committee to also include "any name under which a committee

conducts activities, such as solicitations or other communications, including a special project

name or other designation."  11 C.F.R. § 102.14(a).  The FEC also adopted limited exceptions to

this rule, including that "[a]n unauthorized political committee may include the name of a

candidate in the title of a special project name or other communication if the title clearly and

unambiguously shows opposition to the named candidate."  11 C.F.R. § 102.14(b)(3).  Through

advisory opinions, the FEC determined that "a special project name or other designation"

includes website URLs, the titles of Facebook pages, and Twitter account handles.  *See* FEC

Advisory Opinions 1995-09 (NewtWatch PAC) and 2015-04 (Collective Actions PAC).

64.     The FEC's interpretation and application of the PAC Naming Prohibition in Advisory

Opinion 2015-04, imposes more stringent restrictions on the supportive use of federal candidate

names in an unauthorized political committee's "special project name or other designation" than

it does on the same committee's use of candidate names in a manner that conveys opposition.

That is, an unauthorized political committee, such as PAG, may not use the name of a federal

candidate it *supports* in a "special project name or other designation," while another

unauthorized political committee could use that very same federal candidate's name in a "special

project name or other designation" in a manner that conveys *opposition*.  Thus, PAG's Facebook

page with the heading "I Like Mike Huckabee" is impermissible under FEC regulations, but a

Facebook page with the heading "I *Don't* Like Mike Huckabee" would be permitted.

65.     These speech restrictions are impermissibly content-based.  "Government regulation

of speech is content based if a law applies to particular speech because of the topic discussed or

the idea or message expressed."  *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2227 (2015).

As applied by the FEC, an unauthorized political committee is restricted in its ability to

communicate with respect to federal candidates it supports, while the exact same unauthorized

political committee is free to use the name of a federal candidate it opposes.  The restrictions that

apply to any given use of a candidate's name in a special project name or other designation

"depend entirely on the communicative content of the" use.  *Id*.  The FEC's regulation is, on its

face, a content-based speech restriction.

66.     The Supreme Court recently invalidated a similar regulatory scheme.  The Court

explained, "[t]he [Gilbert, AZ, Land Development] Code imposes more stringent restrictions on

these signs than it does on signs conveying other messages.  We hold that these provisions are content-based regulations of speech that cannot survive strict scrutiny." *Reed*, 135 S. Ct. at 2224.

67.     The government "has no power to restrict expression because of its message, its ideas, its subject matters, or its content." *Reed*, 135 S. Ct. at 2226 *citing Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).  The regulation at issue here is "a regulation of speech 'on its face' [that] draws distinctions based on the message a speaker conveys." *Id*. at 2227.

68.     "Content-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226.  The FEC's Final Rules of 1992 and 1994 indicate the Commission identified only a "legitimate governmental interest" when considering the regulation at issue.

69.     PAG is entitled to a declaratory judgment that its use of website URLs, Facebook pages, and Twitter handles that include the name of a candidate without expressing opposition to that candidate do not violate the First Amendment or the FECA.

70.     If the PAC Naming Prohibition is applied in a manner that prohibits the use of certain words (*i.e.*, candidate names) in website URLs, Facebook page titles, and Twitter accounts because those uses demonstrate electoral support rather than opposition, such application violates the First Amendment and must be enjoined.


**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

1.  A declaratory judgment that FEC Advisory Opinion 2015-04 interpreting and applying

52 U.S.C. § 30102(e)(4) and 11 C.F.R. § 102.14 to Pursuing America's Greatness's proposed

communications is void under 5 U.S.C. § 706 and unconstitutional under the First Amendment;

2.  A preliminary and permanent injunction enjoining Defendant FEC from enforcing 52

U.S.C. § 30102(e)(4) and any applicable rules and regulations regarding those provisions, against

Pursuing America's Greatness and its intended activities;

3.  An award of nominal damages of $1 for the violation of Plaintiff's constitutional rights;

4.  Costs and attorney's fees pursuant to any applicable statute or authority;

5.  Any other relief that the Court deems just and appropriate.


Respectfully submitted,


/s/ Jason Torchinsky
Jason Torchinsky (D.C. Bar No. 976033)
J. Michael Bayes (D.C. Bar No. 501845)
Shawn Sheehy
HOLTZMAN VOGEL JOSEFIAK PLLC

45 North Hill Drive, Suite 100
Warrenton, VA 20186
Phone: (540) 341-8808
Fax: (540) 341-8809
jtorchinsky@hvjlaw.com
mbayes@hvjlaw.com
ssheehy@hvjlaw.com

*Counsel for Plaintiff Pursuing America's Greatness*


Dated:  July 27, 2015

VERIFICATION

PURSUING AMERICA'S GREATNESS VERIFICATION

I, Bryan Jeffrey, declare as follows:

1.  I am the Treasurer of Pursuing America's Greatness.

2.  I have personal knowledge of Pursuing America's Greatness, and its operations, including those set out in this Complaint, and if called upon to testify, I would testify competently as to the matters stated herein.

3.  I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning Pursuing America's Greatness, are true and correct.


Executed this 27th day of July, 2015

_____

Bryan Jeffrey

Treasurer, Pursuing America's Greatness