## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| **PURSUING AMERICA'S GREATNESS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-1217 (TSC) |
| | ) | |
| **FEDERAL ELECTION COMMISSION,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### <u>MEMORANDUM OPINION</u>

On March 21, 2019, this court granted summary judgment to Plaintiff Pursuing

America's Greatness (PAG) on its claim against the Federal Election Commission, finding a

content-based regulation governing use of candidate names in unauthorized political committees

was not narrowly tailored to promote a compelling governmental interest.  (ECF Nos. 48 & 49.)

PAG moved for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF

No. 50.)  Having considered the parties' briefing, and for the reasons that follow, the court will

GRANT in part and DENY in part PAG's motion for fees.

## I.     BACKGROUND[1]

PAG challenged a regulation, 11 C.F.R. § 102.14, governing the use of candidate names

in unauthorized committees.  (ECF No. 1, Compl.)  Section 102.14(a) prohibited unauthorized

---

[1] Most of the relevant background is contained in *Pursuing America's Greatness v. FEC*, 132 F. Supp. 3d 23, 26–31 (D.D.C. 2015) (*PAG I*), *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 503–04 (D.C. Cir. 2016) (*PAG II*), *Pursuing America's Greatness v. FEC*, 363 F. Supp. 3d 94, 97–100 (D.D.C. 2019) (*PAG III*) and will not be repeated here.

political committees from using the names of federal candidates in any name under which the political committee conducts activities, including the titles of websites and social media pages. 11 CFR § 102.14(a). Subsection (b)(3) created an exception allowing an unauthorized committee to use a candidate's name in its special project name if "the title clearly and unambiguously shows opposition to the named candidate." 11 CFR § 102.14(b)(3). PAG brought three challenges to this regulation: 1) an Administrative Procedure Act (APA) challenge to an advisory opinion that applied the regulation to PAG's conduct, 2) a First Amendment challenge that the regulation impermissibly restricted speech based on content, and 3) a First Amendment challenge that the regulation was a prior restraint. (Compl. at 10–18.)

PAG initially moved for a preliminary injunction, which this court denied. *PAG I*, 132 F. Supp. 3d at 23. The court found that the regulation was neither a prior restraint on speech nor a content-based speech regulation, but a permissible component of "FECA's disclosure regime," imposing a limited burden on speech. *Id.* at 37–39. This court also rejected PAG's argument that the regulation violated the APA. *Id.* at 36. On appeal, the D.C. Circuit reversed and remanded, finding that the regulation was a content-based speech ban that must be assessed under a strict scrutiny standard. *PAG II*, 831 F.3d at 510–512. The Court further found that the regulation would likely fail the second strict scrutiny requirement—that it be narrowly tailored— because there was "a substantial likelihood that section 102.14 [was] not the least restrictive means to achieve the government's interest." *Id.* at 510.

PAG then moved for summary judgment on the grounds that the regulation was an impermissible content-based restriction. *PAG III*, 363 F. Supp. 3d at 99–100. It did not pursue either its prior restraint or APA claims. *Id.* Therefore, the only question before this court on summary judgment was whether the FEC had met its burden of proving that section 102.14(a) is

2

narrowly tailored to promote a compelling governmental interest.  *Id.*  The court found it had not,

holding that while the FEC had shown a compelling government interest (avoiding voter

confusion), it had not mustered non-speculative evidence that the regulation's speech ban was

narrowly tailored, particularly given available alternative means of disclosure.  *Id.* at 100–105.

PAG now moves for attorneys' fees under the Equal Access to Justice Act (EAJA),

which permits a court to award reasonable attorney's fees to prevailing parties.  28 U.S.C.

§ 2412(d)(1)(A).

## II.  ANALYSIS

### A.  <u>SUBSTANTIAL JUSTIFICATION</u>

The EAJA establishes several criteria, such as timeliness and net worth, that a party must

meet in order to be entitled to fees.  28 U.S.C. § 2412(d)(1).  The FEC concedes that PAG meets

the statutory criteria, but contends PAG cannot recover fees because the FEC's legal position

was substantially justified.  (ECF No. 53, FEC Opp., at 5, 15.)

1.  <u>Legal Standard</u>

The EAJA authorizes an award of fees to the prevailing party unless the other party's

legal position was "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  The government must

be "substantially justified" in both its litigating position in court and "the action . . . by the

agency upon which the civil action is based."  28 U.S.C. § 2412(d)(2)(D); *see also Role Models*

*Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004) ("The government . . . must

demonstrate the reasonableness not only of its litigation position, but also of the agency's

actions." (emphasis omitted)).  The court reviews the two "as an inclusive whole" and makes

"only one threshold determination for the entire civil action."  *Comm'r, INS v. Jean*, 496 U.S.

154, 159, 162 (1990).

In order to meet this standard, the government must show that its position was "justified to a degree that could satisfy a reasonable person or otherwise having a reasonable basis both in law and fact.'" *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1172 (D.C. Cir. 2005) (internal citations and quotations omitted). The "hallmark of the substantial justification test is reasonableness." *Role Models*, 353 F.3d at 967. However, "the government need not establish that it was correct—indeed, since the movant is established as a prevailing party it could never do so." *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1332 (D.C. Cir. 1998). Nor must it show "that its decision to litigate was based on a substantial probability of prevailing.'" *Taucher*, 396 F.3d at 1173 (quoting *Spencer v. NLRB*, 712 F.2d 539, 557 (D.C. Cir. 1983)) (internal quotation marks omitted).

In determining whether a position was substantially justified, the court must "do more than explain, repeat, characterize, and describe the merits . . . decision." *Taucher*, 396 F.3d at 1174 (quoting *Halverson v. Slater*, 206 F.3d 1205, 1209 (D.C. Cir. 2000)) (internal quotation mark omitted). Instead, a court must "analyze why the government's position failed in court." *Id.* But the court must "guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'" *Id.* at 1173 (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).

2. The FEC Was Not Substantially Justified

In opposing PAG's motion for preliminary injunction, the FEC argued that the challenged regulation was a disclosure provision subject to exacting scrutiny, and that the regulation enforced the statute's requirement that unauthorized committees disclose that the candidate did not authorize the communications. *Id.* The D.C. Circuit rejected this argument, finding that the regulation was not a disclosure provision because it did not require PAG to say anything and instead "'prevent[ed]' PAG from 'conveying information to the public.'" *PAG II*,

831 F.3d at 507 (quoting *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 650 (1985)).  Instead, the Court found the regulation was a content-based ban on speech subject to strict scrutiny.  *Id.* at 510.  It reached this conclusion applying *Zauderer* and two other seminal Supreme Court cases in the political speech context.  *See id.* at 507–08 (citing *Citizens United v. FEC*, 558 U.S. 310, 366 (2010); *McConnell v. FEC*, 540 U.S. 93, 201 (2003)).  Thus, the FEC lost because its argument was contrary to Supreme Court precedent regarding the level of scrutiny applicable to disclosure provisions and bans on political speech.

The FEC's main support for its exacting scrutiny argument was two prior decisions, *Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988), and *Galliano v. U.S. Postal Service*, 836 F.2d 1362 (D.C. Cir. 1988), which involved a prior version of the regulation.  (FEC Opp. at 7.) The Circuit disposed of these cases in a footnote, explaining they were inapplicable because "[a]lthough those cases characterized FECA's naming restrictions . . . as part of a disclosure regime, they did not assess the constitutionality of section 102.14."  *PAG II*, 831 F.3d at 508 n.4. *Common Cause* held that it was reasonable to prohibit an unauthorized committee from using a candidate's name not only in the committee name but "any title" a committee uses for "solicitation or propagandizing purposes."  842 F.2d at 441.  But *Common Cause* did not address whether the FEC could draw a distinction between unauthorized committees that support or oppose a candidate.  *See id.*  Indeed, the Court of Appeals decided *Common Cause* four years before the FEC promulgated the regulation at issue here.  *PAG III*, 363 F. Supp. 3d at 98.  And while *Common Cause* noted that extending the naming prohibition to project names and titles was not an "implausible interpretation," it did not endorse the content-based regime the FEC later developed.  842 F.2d at 441, 448.

During both the preliminary injunction stage and at summary judgment, the FEC argued that the regulation survived strict scrutiny. *PAG I*, 132 F. Supp 3d at 38; *PAG III*, 363 F. Supp. 3d at 100, n.3. The D.C. Circuit assumed combating voter confusion was a compelling governmental interest, *PAG II*, 831 F.3d at 510; and at summary judgment, this court found that it was. *PAG III*, 363 F. Supp. 3d at 100–04. The FEC contended the regulation was narrowly tailored because banning speech was less burdensome than requiring large disclaimers; moreover, the court in *Common Cause* had observed that disclaimers might not reduce voter confusion. (FEC Opp. at 9–10.) The D.C. Circuit found the FEC was unlikely to prevail on this argument because large disclaimers could reduce confusion and the FEC offered no evidence that such disclaimers would be less effective than banning speech. *PAG II*, 831 F.3d at 510–11. On summary judgment, this court found the FEC still had not adduced sufficient evidence because it offered only anecdotal concerns (from a national committee, a commissioner, and a staff member) about disclaimers' effectiveness. *PAG III*, 363 F. Supp. 3d at 104–06. The FEC's arguments that the regulation was narrowly tailored relied on outdated caselaw and the record contained only three anecdotal statements about whether disclaimers would be effective.[2]

Making "one threshold determination" for the whole litigation, *Jean*, 496 U.S. at 159, the court finds the FEC's legal position was not substantially justified. The key issue in this case

---

[2] PAG also contends that the FEC could not have had a reasonable factual basis because the court decided the case on summary judgment. (ECF No. 50-1, Pl. Br., at 4.) But an agency is not *per se* unjustified when it loses at summary judgment. *See F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996). Indeed, that an agency "fail[s] to provide an adequate explanation or fail[s] to consider some relevant factor in reaching a decision 'may not warrant a finding that [the] agency's action lacked substantial justification.'" *Id.* at 595 (quoting *Wilkett v. ICC*, 844 F.2d 867, 871 (D.C. Cir. 1988)). Here, the FEC did produce a substantial, albeit insufficient, record. Its error was failing to adequately weigh the burden imposed by the ban against the lesser burden from the disclaimers.

was whether to apply exacting or strict scrutiny to the challenged regulation, and the D.C. Circuit disposed of that question easily based on longstanding Supreme Court precedent.  *PAG II*, 831 F.3d at 507–08.  The FEC relied heavily on the 1988 *Common Cause* decision that, while endorsing the statutory disclosure regime, did not address the regulation at issue or content-based bans on speech in disclosure regimes.  842 F.2d at 441, 448.  And on summary judgment, it was not a close question that the FEC's record failed to show narrow tailoring.  *PAG III*, 363 F. Supp. 3d at 100–106.  Further, while there was no directly controlling precedent on the regulation's constitutionality, no party was called upon to analyze murky caselaw or split decisions on how to handle a content-based ban on speech.  *Taucher*, 396 F.3d at 1178 (government substantially justified where no controlling precedent applied and the parties had to interpret dueling concurrences to determine the standard).[3]  Therefore, the court finds that the FEC's legal position was not substantially justified and PAG is entitled to attorneys' fees under the EAJA.

## B.  FEE CALCULATION

PAG is entitled to "reasonable" attorney's fees and expenses.  28 U.S.C. § 2412(d)(2)(A). To determine the "amount of a reasonable fee" the court multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789,

---

[3] PAG also challenged the FEC's advisory opinion applying the regulation to websites and social media pages that do not involve fundraising, and argued that it amounted to a prior restraint.  The Court of Appeals found the APA claim was unlikely to be successful, *PAG II*, 831 F.3d at 506, and this court found the prior restraint claim was unlikely to be successful, *PAG I*, 132 F. Supp. 3d at 38–39.  While the court must examine the agency's reasonableness as a whole, the prevailing party can recover even when they win on only one issue.  *Air Transport Ass'n. of Canada v. FAA*, 156 F.3d 1329, 1332–33 (D.C. Cir. 1998).  The primary issue in this case was the regulation's constitutionality, and the FEC's position on that issue forms the basis for determining substantial justification.

795 (2002).  PAG has the burden to establish the reasonableness of its request, and supporting

documentation must be sufficiently detailed to permit the court to determine whether the hours

were reasonable.  *See Role Models*, 353 F.3d at 970.

PAG submitted detailed records of its attorneys' and staff's hours, costs, and expenses.

(ECF No. 3, Billing Entries; ECF No. 4, Torchinsky Decl.)  Based on these records, it requests

payment for 1,122.7 attorney hours, for a total award of $228,682.22 in fees, plus $6,168.85 in

costs and expenses.  (Torchinsky Decl. ¶ 6.)  The FEC does not contest PAG's costs or requested

rates, but does contest the numbers of hours for which PAG requests reimbursement.  (FEC Opp.

at 12–20.)

### 1. Unsuccessful Claims

The FEC contends that PAG cannot recover fees for its unsuccessful claim that the

regulation was a prior restraint.  (FEC. Opp. at 13–14.)  But PAG's prior restraint argument was

an alternative ground for its ultimately successful claim that the regulation violated the First

Amendment.  "[N]o fee may be granted for work done on claims on which the party did not

prevail, unless the unsuccessful claims were submitted as alternative grounds for a successful

outcome that the plaintiff did actually achieve."  *Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C.

Cir. 1993).  Therefore, the court will allow PAG to recover for time spent on its prior restraint

arguments.

The FEC also contends that PAG cannot recover for its unsuccessful APA challenge of

the Advisory Opinion.  (*Id.* at 13–15.)  For partially prevailing parties, "the degree of the

plaintiff's overall success goes to the reasonableness of the award."  *Tex. State Teachers Ass'n v.

Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).  The court has the discretion to reduce the

overall fee award to reflect that degree of success, regardless of whether the total number of

hours expended was reasonable.  *Hensley*, 461 U.S. at 436 (fee-shifting statute does not authorize award whenever "conscientious counsel tried the case with devotion and skill" but rather "the most critical factor is the degree of success obtained").  Here, PAG was ultimately successful in advancing its First Amendment claim.  Indeed, the relief it obtained encompassed and surpassed that which it could have obtained based on the narrow issue presented in the APA claim.  Therefore, the court declines to reduce the amount of the award based on partial success.  Moreover, only five billing entries specifically relate to the Advisory Opinion.  (Billing Entries at 1–2.)  And while it is PAG's burden to show its fee request is reasonable, the FEC has not suggested a reasonable reduction for PAG's unsuccessful arguments on the Advisory Opinion.  (*See* FEC Opp. 6, 13–14.)

      2.  <u>Number of Hours</u>

To support a fee award, "documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *Role Models*, 353 F.3d at 970 (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (internal quotation marks and alterations omitted).  Where the documentation does "not adequately describe the legal work for which the client is being billed," a court cannot "verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task."  *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989).  For example, billing entries for meetings and telephone conferences where "no mention [was] made of the subject matter" are insufficient.  *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990); *see also Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005) (finding vague entries included: "meet with attys," "prepare for trial," and "trial preparation").  By contrast, the D.C. Circuit has found entries like "[r]esearch and drafting of FOIA part of complaint" and "[c]ourt

appearance on plaintiffs' motion for a preliminary injunction" to be "entirely adequate." *Nat'l*

*Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1332 (D.C. Cir. 1982).

The FEC objects to PAG's block-billing, i.e., describing multiple tasks in one entry.

Block-billing is disfavored because, if some tasks are not reimbursable, the court cannot "verify[

] that [the party] deducted the proper amount of time." *Role Models*, 353 F.3d at 971.  However,

a party can recover for block-billed tasks if there is "sufficient detail" to "evaluate what the

lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith*

*v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006).

The court's review of the challenged block-billing finds that over thirty billing entries

describe simply "research" or "related research," without specifying what research was

conducted.  (*See, e.g.*, Billing Entries at entry dated 07/16/2015 by Jason Torchinsky for

"Research"; entry dated 11/19/2015 by Michael Bayes for "Conference with JT and SS; related

research.")  These limited descriptions are inadequate and do not permit the court to determine

whether that research was reasonable.  *See Role Models*, 353 F.3d at 971 (explaining "numerous

entries in which attorneys billed simply for 'research'" were "inadequate").  Similarly, there are

over sixty entries for calls and correspondence that do not indicate their subject matter or relation

to the case.  (*See, e.g.*, Billing Entries at entry dated 07/16/2015 by Michael Bayes

"correspondence with JT"; entry dated 7/17/15 by Jason Torchinsky for "Correspondence.")

These descriptions are similarly inadequate, and the court cannot determine whether the purpose

of the correspondence or call was reasonable.  *See Role Models*, 353 F.3d at 971 (finding

inadequate entries "for time spent in teleconferences or meetings—over one hundred in total—

the purposes of which are not provided."); *see also Michigan v. EPA*, 254 F.3d 1087, 1093 (D.C.

Cir. 2001) (finding "numerous deficient entries, such as those listed only as 'conference calls' with no indication of who these calls were with or what they concerned").

PAG does not respond to FEC's specific challenges to the block-billed descriptions, arguing instead that the court should focus on whether the total time is reasonable.  It emphasizes that "if [lawyers] have to document in great detail every quarter hour or half hour of how they spend their time on civil rights cases, two undesirable results will follow: their fee petitions will be higher, and the lawyers will simply waste precious time doing menial clerical tasks."  (ECF No. 54, Pl. Reply, at 12 (quoting *Smith*, 466 F. Supp. 2d at 158).)  However, the D.C. Circuit has cautioned that when a billing entry lacks sufficient detail, such as the who and what of a conference call, the "'description fails to provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable,' and thus cannot be charged to the taxpayers." *Michigan v. EPA*, 254 F.3d at 1093 (quoting *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989)).  Therefore, the court will reduce the fee award, in the amount discussed below, to account for the inadequate descriptions regarding research, calls, conferences, and correspondence in the challenged block-billing entries.

The FEC also objects to nineteen billing entries for attorney time spent on administrative tasks.  (FEC Opp. at 20.)  "[P]urely clerical or secretarial tasks should not be billed at a paralegal [or attorney] rate regardless of who performs them." *Role Models*, 353 F.3d at 973 (alteration in original) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989)).  PAG does not respond to this argument.  (ECF No. 53-4.)  Therefore, the court will reduce the fee, in the amount discussed below, to account for billing entries for clerical tasks.

Finally, the FEC challenges numerous entries for tasks that appear unrelated to this litigation.  (FEC Opp. at 19–20.)  For example, the first appears to relate to PAG's 48-hour

independent expenditure reporting requirement, (Billing Entries at entry dated 7/16/2015 by Michael Bayes), and PAG makes no attempt to explain how this relates to this case. (*See* Pl. Reply.) The FEC points to ten other similar entries, (ECF No. 53-3), and PAG responds only to three. It argues two are compensable because they reflect discussion of a case in the Eastern District of Virginia involving similar issues. (Pl. Reply at 13.) PAG can recover for the limited time spent discussing relevant litigation because the amount of time spent appears reasonable. PAG also argues that its call with a printing company regarding an application to the Supreme Court is compensable, (*id.*), but that is an administrative task for which PAG cannot recover. Having reviewed the other challenged entries, the court agrees with the FEC that it is impossible to determine whether the entries are related to the case, and will reduce the fee, in the amount discussed below, to account for tasks that appear unrelated to the litigation.

Where a "large number of entries" are deficient "[a] fixed reduction is appropriate." *Role Models*, 353 F.3d at 973. Here, the court has found approximately 120 deficient entries; about twenty percent of the billing entries. But because PAG block-billed, many of these deficiencies are only part of an otherwise adequate time entry. (*See* Billing Entries.) Moreover, the court cannot determine how much of each entry is allocable to the inadequate description, and neither party attempted to do so.

While PAG's billing entries had numerous deficiencies, the court does not find that the hours were so excessive as to warrant the fifty percent reduction the FEC seeks. *Cf. Role Models*, 353 F.3d at 973 (reducing fee by fifty percent for inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries). PAG's hours are not so excessive as those billed in *Role Models*, in which the Circuit noted that over 1,000 hours was "overkill" for a case that involved a preliminary injunction, reversal on appeal, and

immediate entry of a permanent injunction. *Role Models*, 353 F.3d at 972. Here, however, the parties engaged in discovery and summary judgment briefing, and the FEC does not contend that PAG over-billed hours on a specific brief or that it over-staffed the case.

The court will, however, reduce the fee by fifteen percent to account for the over 100 entries that lack adequate descriptions, but which are lumped together with other compensable activities. *Cf. Michigan v. EPA*, 254 F.3d at 1095 (reducing fee award by ten percent where "numerous entries" were "devoid of any descriptive rationale for their occurrence"); *Bennett v. Castro*, 74 F. Supp. 3d 382, 406 (D.D.C. 2014) (reducing fee award by ten percent where "several dozen" entries "lack[ed] adequate subject-matter descriptions, and a handful more [were] lumped together with activities that might not warrant reimbursement").

### III.    CONCLUSION

For the stated reasons, this court will GRANT in part and DENY in part PAG's motion for fees. PAG will be awarded fees in the amount of $194,379.89 and costs and expenses in the amount of $6,168.85. A corresponding Order will issue separately.

Date:  June 1, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN